# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

ROOSEVELT J. LOUICE BURGESS,  )
                                   )
   Movant,                           )
                                   )
v.                                    )      CV416-147
                                   )      CR493-205
UNITED STATES OF AMERICA,    )
                                   )
   Respondent.           )

## **REPORT AND RECOMMENDATION**

Movant Roosevelt Burgess, represented by counsel, moves under 28 U.S.C. § 2255 to vacate the Armed Career Criminal Act (ACCA) enhancement applied to his 1994 sentence for possession of a firearm by a convicted felon. Doc. 122;[1] *see* docs. 1 (indictment), 22 (superseding indictment), 47 (jury verdict), 59 (judgment for 387 months' imprisonment); *United States v. Burgess*, 79 F.3d 1159 (11th Cir. 1996) (affirming conviction). He seeks to exploit the new rule announced in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), and made retroactive by *Welch v. United States*, 578 U.S. __, 136 S. Ct. 1257 (2016), to neutralize his 32-year enhanced sentence as a career felon.

---

[1] The Court is citing to the criminal docket in CR493-205 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

Doc. 122. The Government has filed a motion to dismiss Burgess' habeas motion, which is **DENIED** for the reasons that follow. Doc. 133.

I. BACKGROUND

On June 8, 1994, a jury convicted Burgess of bank robbery in violation of 18 U.S.C. § 2113(a)(d), possession and unlawful use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), and possession of a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(e)(1). *See* docs. 47 (jury verdict) & 59 (judgment, entered October 19, 1994). His Presentence Investigation Report (PSR) deemed him an armed career criminal, based on three prior convictions for violent felonies. PSR at ¶¶ 18 & 32-34; *see also* doc. 37 (sentencing enhancement information). Judgment became final when the Eleventh Circuit affirmed the Court's sentence on March 25, 1996. Docs. 70 & 71.

Burgess filed the present § 2255 motion nearly twenty years later, arguing that he no longer qualifies as an armed career criminal. Doc. 122 (filed June 13, 2016); *see In re Burgess*, No. 16-13208-J (11th Cir. July 1, 2016) (granting him permission to file a successive § 2255 motion). He insists that his enhanced sentence has been undone by the *Johnson* decision and asks for immediate relief from the remaining

years of his three decade long incarceration. Doc. 122.

## II. ANALYSIS

The ACCA provides enhanced penalties for defendants who are (1) convicted of being felons in possession of firearms in violation of 18 U.S.C. § 922(g), and (2) have "three prior convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). Plain vanilla, felon-in-possession convictions fetch a maximum 10 year sentence, *see* 18 U.S.C. § 922(a)(2), while the ACCA enhancement mandates a 15 year minimum (and a maximum of life). 18 U.S.C. § 924(e)(1).

To qualify as an ACCA "violent felony," the crime must be an offense that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves the use of explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(i)-(ii). These three definitions are known, respectively, as the (1) elements clause, (2) enumerated crimes clause, and (3) residual clause. *Johnson* held that that "residual clause" violated due process. *See* 135 S. Ct. 2551,

2557. Offenses that fall under the other two clauses survive. *Id.* at 2563; *United States v. Tinker*, 618 F. App'x 635, 637 (11th Cir. 2015).

Burgess' enhancement was based on three "violent felonies": one conviction for "felonious assault" in Michigan and two convictions for assault with a deadly weapon inflicting serious injury in North Carolina. PSR[2] at 31, 33 & 34; doc. 37. Burgess disputes that these offenses still qualify as ACCA predicates post-*Johnson* and asks the Court to vacate his enhanced sentence. Docs. 122 & 137. The Government opposes. Doc. 133.

A.  **Michigan Felonious Assault**

As recently set forth by the Sixth Circuit:

In Michigan, any "person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of" felonious assault, also called assault with a dangerous weapon. Mich. Comp. Laws § 750.82. That language, reframed as elements,[3]

---

[2]  "In determining the nature of a defendant's prior convictions and whether to classify the defendant as an armed career criminal under the ACCA, the sentencing court may rely on *Shepard* [*v. United States*, 544 U.S. 13, 16 (2005)]-approved documents and any undisputed facts in the [PSR]." *In re Hires*, 825 F.3d 1297, 1302 (11th Cir. 2016) (citing *United States v. McCloud*, 818 F.3d 591, 595, 599 (11th Cir. 2016)); *United States v. Wade*, 458 F.3d 1273, 1277-78 (11th Cir. 2006).

[3]  The Sixth Circuit applied the "categorical approach" to determine whether felonious assault qualifies as an ACCA-enhancing offense. *United States v. Harris*, __ F.3d __, 2017 WL 1228556 at 1 (6th Cir. Apr. 4, 2017). As observed by the Court,

4

requires "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Jackson*, N.W.2d 340, 343 n. 2 (Mich. 2010) (emphasis and quotation omitted). The assault must consist of attempted battery or "an act that would cause a reasonable person to fear or apprehend an immediate battery," and that the defendant must have intended to injure or cause fear of immediate battery. *People v. Micsak*, 2013 WL 275906 at *2 (Mich. Ct. App. Jan. 24, 2013). A battery, in this context, is "a forceful or violent touching," *id.*; *see People v. Datema*, 533 N.W.2d 272, 275 n. 8 (Mich. 1995), which Michigan defines as "any use of physical force against another person so as to harm or embarrass" that person, *People v. Chandler*, 506 N.W.2d 882, 884

---

When an offense of conviction does not list multiple elements in the alternative, it is not "divisible." *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016). And when the relevant statute is not divisible, as all agree is the case here, we apply the "categorical approach" to determine what the state offense entails. *Descamps v. United States*, 133 S.Ct. 2276, 2284 (2013). That means we look only to the offense's statutory definition along with controlling judicial interpretations of it, rather than at the facts underlying the conviction, to determine whether the offense is a crime of violence. *See Taylor v. United States*, 495 U.S. 575, 600 (1990).

*Id.* Further,

> *Mathis* itself provided the following example of a non-divisible statute: an assault with a deadly weapon offense where "deadly weapon" meant "knife, gun, bat, or similar weapon[.]" 136 S. Ct. at 2249 (citation omitted). That, the Court said, would be an example of "diverse means of satisfying a single element of a single crime" where "a jury need not find (or a defendant admit) any particular item[.]" *Id.* That is just the case here: a jury need only find that an assault was committed with some "dangerous weapon" -- they need not be unanimous on what particular weapon was used. And the second subsection criminalizes the same conduct, but narrows the scope of that conduct to a particular location.

*United States v. McClendon*, 2017 WL 411348 (E.D. Mich. Jan. 31, 2017). In other words, because felonious assault in Michigan provides *elements* (specific requirements comprising the offense) and not *means* (multiple alternative ways to commit the offense), the categorical approach is the appropriate lens through which to assess the statute under *Descamps* and *Mathis*.

5

(Mich. App. 1993). And a dangerous weapon is "any object that is used in a way that is likely to cause serious physical injury or death." *People v. Davis*, 2002 WL 31117043 at *2 (Mich. Ct. App. Sept. 24, 2002); *see People v. Goolsby*, 279 N.W. 867, 869 (Mich. 1938).

Taken together, these elements entail "the use, attempted use, or threatened use of physical force" . . . . And our cases since *Johnson* show why that conclusion remains sound. When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under the elements clause. [*United States v. Rede-Mendez*, 680 F.3d 552, 558 (6th Cir. 2012)]; *see United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016). Michigan felonious assault meets that threshold because there is no way to commit it without intentionally attempting or threatening physical force against another with a dangerous weapon.

*Harris*, __ F.3d __, 2017 WL 1228556 at 1-2 (holding "felonious assault" to be a "violent felony" under the Sentencing Guidelines, and reaffirming *United States v. Mosley*, 339 F. Appx. 568, 575 (6th Cir. 2009),[4] which held pre-*Johnson* that Michigan felonious assault was a "violent felony" under the ACCA). Burgess' 1978 conviction for felonious assault[5] (*see* doc. 133-2 at 3-5 (information, order of conviction, and sentence for felonious assault in violation of M.C.L.A.

---

[4] Burgess relies upon *Warrick v. United States*, 2016 WL 6833746 at *2-3 (N.D. Ohio Nov. 21, 2016), to argue that post-*Johnson*, *Mosley* is bad law. *Mosley*, however, was explicitly (and correctly) reaffirmed by the *Harris* court.

[5] Aside from a 1994 amendment to add language defining a "weapon free school zone," the statute does not appear to have been substantively modified since enactment in 1931. *See* 1994 Mich. Legis. Serv. P.A. 158 (H.B. 4673) (WEST).

§ 750.82)) remains a qualifying "violent felony" for ACCA sentence-enhancing purposes. That's one violent felony.[6]

## B. North Carolina Assault with a Deadly Weapon Inflicting Serious Injury

Burgess' North Carolina convictions are more problematic. Under North Carolina law, assault with a deadly weapon can occur in any one

---

[6] Burgess disagrees because, he reasons, a felonious assault conviction can be sustained without proof of the use or attempt to utilize any force at all, doc. 137 at 8 (quoting *People v. Pace*, 302 N.W.2d 216, 221 (Mich. Ct. App. 1981) (which held that "the use of a deadly weapon in carrying out an assault is not the equivalent of the utilization of deadly force.")). That reasoning was rejected by the *Harris* court:

> In resisting this conclusion, Harris points out that someone can commit Michigan battery with offensive touching and that offensive touching does not amount to sufficient force under *Johnson*. But this argument asks us to look at just one element, the assault, to determine whether the offense includes sufficient force. The categorical approach doesn't require that each element of an offense involve use of force; it requires that the offense overall include use of violent force. Michigan felonious assault involves violent force because it proscribes not common law assault but common law assault with a dangerous weapon. And "if a statute ha[s] as an element some degree of, or the threat of, physical force in the more general sense, then the use of a deadly weapon may transform this more general force into the necessary 'violent force' to constitute a crime of violence within the meaning of *Johnson*." *Rafidi*, 829 F.3d at 446 (quotations omitted). That's just what we have here.

*Harris*, 2017 WL 1228556 at *2; *United States v. Walker*, 2017 WL 131554 at *3-4 (E.D. Mich. Jan. 13, 2017) ("[A]cting with intent to place someone in apprehension of an immediate battery constitutes a threat of violent force when that act is performed with a deadly weapon," regardless of whether physical contact was actually made). The Court is convinced by the Sixth Circuit's reasoning and finds it consistent with this Court's own regarding the analogous Georgia aggravated assault statute, O.C.G.A. § 16-5-21(a)(2), holding assault "with a deadly weapon" to constitute the clear use of the "threatened use of physical force against the person of another." *See, e.g., Green v. United States*, 2017 WL 1100443 at *3 (S.D. Ga. Jan. 9, 2017); *Brown v. United States*, 2016 WL 7013531 at *2 (S.D. Ga. Nov. 7, 2016). These are crimes requiring some intentional act to place another in apprehension of physical force -- just the types of crimes that Congress sought to penalize under the ACCA.

7

of several ways: (a) assault with a deadly weapon with intent to kill (AWDWIK); (b) assault with a deadly weapon inflicting serious injury (AWDWISI); and (c) assault with a deadly weapon with intent to kill and inflict serious injury (AWDWIKISI). N.C.G.S.A. § 14-32;[7] *see Jackson v. United States*, 2017 WL 455395 at *3 (E.D.N.C. Feb. 2, 2017). Movant has two convictions[8] for AWDWISI, neither of which

---

[7] It appears the statute has remained essentially unchanged since at least the 1981 amendment. *See* 1993 North Carolina Laws Ch. 539 (H.B. 278) (WEST) (no changes made to N.C.G.S.A. § 14-32); 1994 North Carolina Laws 1st Ex. Sess. Ch. 24 (S.B. 150) (WEST) (same).

[8] Additional problems lie here. Burgess' 1986 conviction is not totally clear: according to the Government's exhibit, he was convicted of "assault with a deadly weapon with intent to kill and inflict serious injury" (AWDWIKISI, N.C.G.S.A. § 14-32(c)) but according to the PSR he was convicted of "assault with a deadly weapon inflicting serious injury" (AWDWISI, N.C.G.S.A. § 14-32(b)). *Compare* doc. 133-5 at 3 (listing conviction as AWDWIKISI) *with* PSR at ¶ 33 (noting a conviction for AWDWISI). Notably, the Government was unable to provide approved *Shepard* documents to support the nature of Burgess' underlying 1986 conviction. *See* doc. 133 at 11 (explaining that "the relevant records have been lost or destroyed by the North Carolina courts"); *see also* doc. 133-5 at 2-3 (letter from Clerk of Forsyth County Superior Court, explaining that the legal file for 85-CRS-57945 had been destroyed and providing a screen print from the Clerk's Office computer program reflecting a summary of the disposition of the case). Meanwhile, at the time of the PSR, the Government was unable to turn up any details of Burgess' *1987* conviction, but now has documents demonstrating he was convicted of "assault with a deadly weapon inflicting serious injury" (AWDWISI) in violation of N.C.G.S.A. § 14-32(b). *Compare* PSR at ¶ ¶ 34 *with* doc. 133-4 at 2.

Fortunately, there is no dispute that Burgess' prior convictions were indeed for AWDWISI. *See* docs. 133 & 137. But the fact that the Court cannot (without hesitation) determine Burgess' convictions is troubling. The Government contends that the burden is on Burgess to produce these records since he must prove his own entitlement to relief. Doc. 133 at 10-12 (citing *In re Moore*, 830 F.3d 1268, 1272-73 (11th Cir. 2016), for the position that "[w]here, as here, the evidence does not clearly

8

survive *Johnson* as qualifying ACCA-enhancement predicates. [9]

---

explain what happened . . . the party with the burden loses.").

The Court agrees with the Government that, as a general rule, movant has the burden of proof in § 2255 proceedings. But it cannot agree that somehow a prisoner -- restricted in his access to *this* Court's documents, much less thirty year old state court and Probation Office documents -- bears the burden of producing *Shepard* documents to establish that the conviction ever qualified as an ACCA offense. The Court must conclude that, just as it has the burden at *sentencing* to prove a defendant's prior convictions to support ACCA enhancement, the Government retains that burden in § 2255 proceedings to show that movant (still) qualifies as an armed career criminal. *See United States v. Harris*, 205 F. Supp. 3d 651, 662 (M.D. Pa. 2016); *United States v. Jones*, 2016 WL 4186929 at *5 (D. Minn. Aug. 8, 2016); *see also United States v. Washington*, 629 F.3d 403, 412 (4th Cir. 2011) (in § 2255 proceedings, *Shepard* documents are part of the *Government's* proof that a conviction qualifies under the ACCA).

[9] Here, as in most cases predating *Johnson*, the sentencing judge did not specify under which clause he considered Burgess' North Carolina assaults to be ACCA predicates. Movant's burden is only to show that -- absent a clear record -- the sentencing judge *may* have used the residual clause. *In re Chance*, 831 F.3d 1335, 1340-41 (11th Cir. 2016) (rejecting as dicta *Moore*, 830 F.3d 1268, 1271-73, which had previously held that a court "cannot grant relief in a § 2255 proceeding unless the movant . . . proves that he was sentenced using the residual clause."). This reduced burden is practical: prior to the *Johnson* decision, there was no reason for sentencing judges to identify whether they were relying upon the elements or residual clause because prior convictions that were not violent felonies under the elements clause were covered by the (then valid) residual clause. *United States v. Redrick*, 841 F.3d 478, 489 (D.C. Cir. 2016).

It bears noting that before *Johnson*, courts in other circuits regularly considered AWDWISI a violent felony under the ACCA, either explicitly based upon the residual clause or without distinguishing between the elements and residual clauses. *See, e.g., McNeill v. United States*, 563 U.S. 816, 818 (2011) (noting defendant conceded that North Carolina assault with a deadly weapon was a violent felony without specifying clause); *United States v. Boykin*, 669 F.3d 467, 469 (4th Cir. 2012) ("assault with a deadly weapon inflicting serious injury" (AWDWISI) is a violent felony for purposes of the ACCA without identifying clause); *United States v. Boykin*, 669 F.3d 467, 469 (4th Cir. 2012) (AWDWISI qualifies as violent felony under 18 U.S.C. § 924(c)); *United States v. Barnette*, 203 F. App'x 518, 520 (4th Cir. 2006) (same); *United States v. Brady*, 438 F. App'x 191, 193 (4th Cir. 2011) (AWDWISI qualifies as a violent felony without specifying clause); *see also United States v. Ocampo-Cruz*, 561 F. App'x 361, 364, 366-67 (5th Cir. 2014) (AWDWISI falls under the residual clause);

9

1. "Violent Felonies"

Post-*Johnson*, ACCA violent felonies must either (1) have "as an element the use, attempted use, or threatened use of physical force against the person of another" (elements clause), or (2) be "burglary, arson, or extortion, [or] involve [ ] the use of explosives" (enumerated (property) crimes clause). 18 U.S.C. § 924(e)(2)(B)(i); *see Taylor*, 495 U.S. at 585-97 (reviewing legislative history of the ACCA). Felonies that previously qualified under the residual clause -- those that "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another" -- no longer count. *Johnson*, 135 S. Ct. 2551, 2557.

To determine whether a felony remains an ACCA predicate, the Court looks first to the statute itself. If it sets forth a single crime committed in one fashion it is "indivisible," and the Court applies the "categorical approach" of examining the statutory definition and

---

*Bland v. United States*, 563 F. App'x 842 (2d Cir. 2014) (affirming ACCA enhancement for AWDWISI under the residual clause). Thus, the Court has evaluated anew whether AWDWISI "lacks 'as an element the use, attempted use, or threatened use of physical force.' Such a determination necessarily would mean that this [ ] conviction could *only* have counted as a crime of violence under the residual clause in the past, irrespective of what the sentencing judge said or did not say." *Chance*, 831 F.3d at 1340.

10

controlling judicial interpretations of it. *Descamps*, 133 S.Ct. at 2284. Only if the statute sets forth various alternative *elements* to committing the crime does it become "divisible," so that the Court may apply the "modified categorical approach" to look beyond the statute itself to the individual defendant's conviction. *Id.*

The three assault crimes set forth in § 14-32[10] are all indivisible. Each consists of a single, indivisible set of elements: AWDWIKISI requires (1) an assault (2) with a deadly weapon (3) with intent to kill (4) inflicting serious injury (5) not resulting in death. *State v. King*, 468 S.E.2d 232, 237 (N.C. 1996). AWDWIK requires (1) an assault (2) with a deadly weapon (3) with the intent to kill. *State v. Garris*, 663 S.E.2d 340, 349 (N.C. 2008). And AWDWISI requires (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death. *State v. Jones*, 538 S.E.2d 917, 922 (N.C. 2000). There are no

---

[10] (a) Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury [(AWDWIKISI)] shall be punished as a Class C felon.

(b) Any person who assaults another person with a deadly weapon and inflicts serious injury [(AWDWISI)] shall be punished as a Class E felon.

(c) Any person who assaults another person with a deadly weapon with intent to kill [(AWDWIK)] shall be punished as a Class E felon.

N.C.G.S.A. § 14-32.

11

alternatives here.

Thus, just as with Michigan's "felonious assault," *see supra*, the Court applies the "categorical approach" to determine whether § 14-32 assaults involve the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see Welch*, 136 S.Ct. at 1262; *Descamps*, 133 S.Ct. at 2284.; *United States v. Brown*, 379 F. App'x 872, 874 (11th Cir. 2010) ("To determine whether a crime constitutes a violent felony, a court must follow a categorical approach in which it looks 'only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'") (quoting *Taylor*, 495 U.S. at 600).

### 2. Not the Elements Clause, Thus the Residual

The Government argues that statute categorically qualifies under the elements clause. Doc. 133 at 7 ("this offense seems to categorically require 'the use, attempted use, or threatened use of physical force against the person of another'"). Unlike Michigan felonious assault, however, there is no specific intent element to North Carolina assaults.

AWDWISI can be proven by "either an actual intent to inflict injury or culpable or criminal negligence from which such intent may be

12

implied." *Jones*, 538 S.E.2d at 922-23. In North Carolina, "culpable or criminal negligence" means "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.* at 923; *Jackson*, 2017 WL 455395 at *3 (AWDWISI "lacks a specific intent element, and requires only 'culpable or criminal negligence' for a conviction.").[11] "Thoughtless disregard," meanwhile, "is less than 'conscious disregard,' which is the definition of recklessness under the Model Penal Code." *United States v. Peterson*, 629 F.3d 432,

---

[11] North Carolina federal courts have distinguished AWDWIK and AWDWIKISI as meeting the requirement of the "use of force" provision that force must be "used" with "a higher degree of intent than negligent or merely accidental conduct." *Jackson*, 2017 WL 455395 at *3 (internal quotes and cite omitted); *see Goins v. United States*, 2017 WL 455400 at *3 (E.D.N.C. Feb. 2, 2017) (they qualify because they "contain[ ] that missing element of specific intent to kill"). However, the case law belies this assertion. *See, e.g., State v. Jones*, 283 S.E.2d 546, 547 (N.C. App. 1981) (defendant convicted of AWDWIK even in the absence of "violent force" where he secretly used poison in an attempt to kill his wife); *Jones*, 538 S.E.2d at 925 (a showing of culpable negligence can satisfy the intent requirement for AWDWIK, though it could not support a basis of intent for a first-degree murder conviction); *Peterson*, 629 F.3d at *United States v. Brown*, __ F. Supp. 3d __, 2017 WL 1383640 at 5-10 (D.D.C. Apr. 12, 2017) (AWDWIK is "not a 'violent felony' under ACCA's elements clause" because (1) it does not "categorically require 'violent force'" (it can be accomplished where the victim is not even aware of the presence of a weapon) and (2) it can be accomplished by mere "culpable negligence").

The Court reserves judgment on the viability of AWDWIK and AWDWIKISI post-*Johnson* for another day, but observes that the specific intent to use, attempt to use, or threaten the use of physical force against the person of another *cannot* be accomplished by mere negligence. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *Begay v. United States*, 553 U.S. 137, 144-45 (2008); *Ocampo-Cruz*, 561 F. App'x at 364.

437-38 (4th Cir. 2011); *Ocampo-Cruz*, 561 F. App'x at 364 ("culpable or criminal negligence," at bottom, "encompasses a *mens rea* similar to ordinary negligence and less than both plain recklessness and the extreme recklessness required by Model Penal Code aggravated assault.").

Because it can be accomplished by any number of levels of culpability -- from intentional to culpably negligent -- the *mens rea* of the offense therefore is not an *element* under the North Carolina assault framework. It is merely a *means* to commit the offense. *See United States v. Geddie*, 125 F. Supp. 3d 592, 600-01 (E.D.N.C. 2015)[12] ("Although the nature of AWDWISI allows the state to obtain a conviction of varying degrees of culpability, because the jury is asked only to find that the defendant generally 'intended' the conduct at issue, the culpability attached to the commission of the act merely constitutes the 'means' of committing the crime, not the elements of the crime."); *see also id.* ("general intent to commit the crime is the 'element,' which may be committed by various means, ranging from 'criminally

---

[12] The Government asks the Court to disregard *Geddie*, as it is non-binding precedent from outside of this Circuit. Doc. 9 at 10 n. 3. It does not, however, explain how *Geddie* is *wrong*. *See id.*

14

negligent' to purposeful."); *id.* ("the state may obtain a conviction upon a showing of 'a thoughtless disregard of consequences' . . . a mental state less than recklessness."). Absent any *mens rea* requirement, all that is left are these elements to commit AWDWISI: (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death. *Jones*, 538 S.E.2d at 922.

Again, the case law demonstrates that a defendant could have negligently, passively, or secretly caused the injury, so that the victim was never placed in apprehension of imminent injury. *See, e.g., Jones*, 538 S.E.2d 917 (a "thoughtless disregard of consequences" or a "heedless indifference to the safety of others," such as driving while intoxicated, is enough to sustain an AWDWISI conviction); *Begay,* 553 U.S. at 144-45 (while "a drunk driver may very well drink on purpose . . . the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate."). But for ACCA purposes, the "[u]se of physical force" against another requires "a higher degree of intent than negligent or merely accidental conduct."[13] *Leocal,*

---

[13] That such *unintentional* physical force results in "serious injury" does not render AWDWISI a "violent felony." "Violent" force is "the sort that is *intended* to cause bodily injury, or at a minimum likely to do so." *Flores v. Ashcroft,* 350 F.3d 666, 672

15

543 U.S. at 9; *Begay,* 553 U.S. at 144-45 (an offense must "involve purposeful, 'violent,' and 'aggressive' conduct."); *United States v. Vinson*, 805 F.3d 120, 125 (4th Cir. 2015) (mere "[r]ecklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence.'"); *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (to qualify as a violent felony, "the use of force must be intentional, not just reckless or negligent."); *United States v. McMurray*, 653 F.3d 367, 374-75 (6th Cir. 2011) ("recklessness" not enough); *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 446-47 (4th Cir. 2005) (not a "crime of violence" unless force is "used" "as a means to an end."); *see also United States v. Holloway*, 630 F.3d 252, 261 (1st Cir. 2011) ("reckless battery," which required only a "disregard of probable harmful consequences to another" could not even be a *residual clause* violent felony); *United States v. Woods*, 576 F.3d 400, 412-13 (7th Cir. 2009) ("[T]he residual clause encompasses only purposeful crimes; crimes with the *mens rea* of recklessness do not fall within its scope."); *United States v. Herrick*, 545 F.3d 53, 59 (1st Cir. 2008) (Wisconsin

---

(7th Cir. 2003) (cited by *Johnson v. United States*, 559 U.S. 133, 140 (2010), for meaning of "violent" within 18 U.S.C. 924(e)(2)(B)).

vehicular homicide felony, which required only "criminal negligence, defined as conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another," not a violent felony even under *residual clause*).

So where is the requisite *element* of the "use, attempted use, or threat of use of physical force against the person of another" to make AWDWISI a violent felony?[14] The Court must conclude that it does not exist. *See Geddie*, 125 F. Supp. 3d 592 (AWDWISI does not qualify under the elements clause); *Hunt v. United States*, 2016 WL 4183311 at *2 (M.D.N.C. Aug. 5, 2016) (Government conceded AWDWISI did not qualify under the elements clause).

AWDWISI was only ever covered by the residual clause, which swept up all those other felonies that "otherwise involve[d] conduct that

---

[14] Because it is indivisible, a prior conviction under N.C.G.S.A. § 14-32(b) can only be an ACCA-predicate if "all violations" of the statute qualify as "violent felonies." *See Begay*, 553 U.S. at 141 ("In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."). So the fact that some AWDWISI convictions can be gained by negligent conduct -- even if *most* are the result of intentional conduct specifically geared to harm in exactly the manner Congress sought to sanction in drafting the ACCA -- means that the statute cannot generically constitute an elements clause, ACCA predicate. *Id.* Since that reduces the AWDWISI conviction to (at most) a residual clause offense at the time of sentencing, it cannot survive *Johnson*. *See Chance*, 831 F.3d at 1340.

17

presents a serious potential risk of physical injury to another."[15] 18 U.S.C. § 924(e)(2)(B)(ii). Thus, it cannot survive *Johnson* as an ACCA-predicate. 135 S. Ct. 2551, 2557. Burgess no longer has the three predicate felony convictions necessary for him to be designated an armed career criminal under the ACCA. His career offender-enhanced sentence is therefore invalid, and the 387-month term of imprisonment that he is currently serving pursuant to the ACCA is in excess of the now-applicable statutory maximum. He must be resentenced.[16]

## III. CONCLUSION

The Government's motion to dismiss Roosevelt Burgess' 28 U.S.C. § 2255 motion (doc. 133) should be **DENIED**. Because he has

---

[15] Because AWDWISI falls under the invalidated residual clause, the Government's various procedural arguments (that Burgess is barred from relief because he lacks a *Johnson*-claim, rendering his motion impermissibly successive, *see* doc. 133 at 2-4, 8-9, 12) are all moot.

[16] Burgess was sentenced to a total of 387 months' imprisonment on three counts: (1) bank robbery and armed bank robbery in violation of 18 U.S.C. §§ 2113(a)&(d); (2) possession and unlawful use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1); and (3) possession of a firearm by a career criminal in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1). For those convictions, he received 300 months for Count 1 and 327 months for Count 3, to run concurrently. He also received 60 months for Count 2, to run consecutively to the other sentences. Doc. 37. Though it likely won't shave much time off his total sentence (*e.g.*, the 300 months for bank robbery and armed bank robbery under §§ 2113(a)&(d) still apply), upon resentencing Burgess would now fall under the statutory maximum 10 year sentence as a felon-in-possession, *see* 18 U.S.C. § 922(a)(2), in lieu of the (now) inapplicable ACCA-enhanced 15 year minimum, *id.* at § 924(e)(1).

18

demonstrated that he is serving a sentence in excess of the maximum authorized by law, movant should be resentenced. It is therefore further recommended that Burgess' § 2255 motion (doc. 122) be **GRANTED** and resentencing scheduled forthwith.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this  27th  day of April, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA